CURTIS D. PARVIN, State Bar No. 116079
curtis.parvin@clydeco.us
CLYDE & CO US LLP
2020 Main Street, Suite 1100
Irvine, California 92614
Telephone: (949) 852-8200
Facsimile: (949) 567 7850

Attorneys for H.W. WOOD LIMITED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| WHITE KNIGHT YACHT LLC,<br><br>Plaintiff,<br><br>v.<br><br>CERTAIN LLOYDS AT LLOYD'S LONDON AND OTHER LONDON MARKET INSURERS; UNITED YACHT TRANSPORT LLC; H.W. WOOD LIMITED; and Does 1 Through 100, Inclusive,<br><br>Defendants. | Case No. 3:18-cv-02616-BAS-BLM<br><br>DEFENDANT H.W. WOOD LIMITED'S MOTION TO DISMISS<br><br>Date:  March 26, 2019<br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>The Hon. Cynthia A. Bashant<br>Trial Date:  None Set |
|---|---|

TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Defendant H. W. WOOD LIMITED ("Wood") moves this Court to dismiss the claims brought against it herein by Plaintiff WHITE KNIGHT YACHT, LLC ("White Knight") pursuant to Federal Rule of Civil Procedure 12(b)(1), (3), and (6) for lack of subject-matter jurisdiction, improper venue, and failure to state a claim.

This motion will be heard on Monday, March 26, 2019, or as soon thereafter as it may be heard before Hon. Cynthia Bashant, with opposition thereto to be filed and served in accordance with the Court's Pre-Trial or other orders. The motion

1 will be heard without oral argument unless otherwise ordered by Judge Bashant.

2 Wood makes this motion on the following grounds: 1) White Knight fails to state claims against Wood because White Knight is not a party to the Cargo Policy; 2) this Court lacks jurisdiction because the Cargo Policy is subject to mandatory jurisdiction in England or Wales; and 3) venue is improper, or alternatively, forum non conveniens.

Wood makes this motion pursuant to Federal Rules of Civil Procedure 12(b), the other authorities cited herein, the Court file, and any argument the Court may entertain.

This motion is made following the meet and confer efforts of counsel that began on December 27, 2018 and concluded on January 3, 2019.

Dated: February 5, 2019    CLYDE & CO US LLP


By: s/ Curtis D. Parvin
    Curtis D. Parvin
    Attorneys for H.W. WOOD LIMITED
    Email: curtis.parvin@clydeco.us

CLYDE & CO US LLP
2020 Main Street, Suite 1100
Irvine, California 92614
Telephone: (949) 852-8200

4283703

2

Case No. 3:18-cv-02616-BAS-BLM

DEFENDANT H.W. WOOD LIMITED'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 1

III. BOTH CAUSES OF ACTION AGAINST WOOD FAIL TO STATE A CLAIM ................................................................................................................ 2

    A. Plaintiff Fails to State a Claim for Intentional Interference With Contractual Relations ............................................................................... 3

    B. Plaintiff Fails to State a Claim for Negligent Interference With Prospective Economic Advantage ........................................................... 5

IV. THIS COURT LACKS JURISDICTION ......................................................... 6

    A. Jurisdiction for Claims Involving the Cargo Policy Is Exclusively in England and Wales ............................................................................. 7

    B. There is No Maritime Jurisdiction for this Claim .................................. 9

V. VENUE ............................................................................................................... 11

    A. Venue is Improper ................................................................................... 11

    B. Forum Non Conveniens .......................................................................... 11

VI. CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allstar Mktg. Grp., LLC v. Your Store Online*, LLC,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) .......................................................... 11

*Argonaut Great Cent. Ins. Co. v. C&K Mkt., Inc.*,
  No. 6:15-CV-01466-MC, 2016 WL 2841207 (D. Or. May 12, 2016),
  aff'd, 716 F. App'x 638 (9th Cir. 2018) ........................................................ 4, 6

*Bos. Telecommunications Grp., Inc. v. Wood*,
  588 F.3d 1201 (9th Cir. 2009) ................................................................. 11, 12

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376, 902 P.2d 740 (1995) .............................................................. 5

*Gerritsen v. Warner Bros. Entm't Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............................................................ 3

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
  513 U.S. 527, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995) ........................... 10

*Kukje Hwajae Ins. Co. v. M/V HYUNDAI LIBERTY*,
  408 F.3d 1250 (9th Cir. 2005) .......................................................................... 7

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) .......................................................................... 3

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326, 60 Cal. Rptr. 2d 539 (1997) .......................................... 5

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) ....................................... 8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) ....................................................................... 7, 8

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118, 791 P.2d 587 (1990) ............................................................. 3

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .......................................................................... 6

*SeeComm Network Servs. Corp. v. Colt Telecommunications*, No. C 04-1283
  MEJ, 2004 WL 1960174 (N.D. Cal. Sept. 3, 2004) ......................................... 8

*Travelers Prop. Cas. Co. of Am. v. Superior Court*, 215 Cal. App. 4th 561,
  155 Cal. Rptr. 3d 459 (2013) ............................................................................ 4

*Victory Carriers, Inc. v. Law*,
  404 U.S. 202, 92 S. Ct. 418, 30 L. Ed. 2d 383 (1971) ................................... 10

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

28 U.S.C. § 1333 .................................................................................................. 9

FRCP Rule 12(b)(1) ............................................................................................. 6

FRCP Rule 12(b)(3) ........................................................................................... 11

FRCP Rule 12(b)(6) ............................................................................................. 2

**OTHER AUTHORITIES**

CACI No. 2201 .................................................................................................... 3

CACI No. 2204 .................................................................................................... 5

CLYDE & CO US LLP
2020 Main Street, Suite 1100
Irvine, California 92614
Telephone: (949) 852-8200

4283703

iii

Case No. 3:18-cv-02616-BAS-BLM

DEFENDANT H.W. WOOD LIMITED'S MOTION TO DISMISS

CLYDE & CO US LLP
2020 Main Street, Suite 1100
Irvine, California 92614
Telephone: (949) 852-8200

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This matter arises out of the transit of a yacht from Vancouver, Canada to Ensenada, Mexico.  Plaintiff White Knight Yacht, LLC ("White Knight") asserts claims against the transporter, the transporter's insurer, and an insurance broker, W.H. Wood Limited ("Wood").  As against Wood, plaintiff alleges intentional interference with contractual relations and negligent interference with prospective economic advantage.  However, the claims cannot stand because White Knight fails to state claims against Wood in that (1) White Knight is not a party to the Cargo Policy and therefore there is no contract with which to interfere; (2) this Court lacks jurisdiction because the Cargo Policy is subject to mandatory jurisdiction in England or Wales; and (3) venue is improper, or alternatively, forum non conveniens.

## II.   FACTUAL BACKGROUND

This matter involves three contracts relating to the transport of a pleasure yacht ("Yacht") owned by Plaintiff White Knight.  The Yacht was insured by International Marine Underwriters ("Marine Policy").  DKT # 1, ¶7.  Sometime in late 2017, White Knight sought to transport the Yacht from Vancouver, Canada to Ensenada, Mexico. DKT # 1, ¶ 8.  White Knight entered into a shipping contract ("Shipping Contract") with Raven Offshore Shipping ("Raven"), a yacht transport broker, to transport the Yacht.  DKT # 1, ¶¶ 5, 8.  Raven brokered the actual transport to defendant United Yacht Transport, LLC ("UYT").  DKT # 1, ¶ 8.

Raven represented to White Knight that, because the provisions of the Shipping Contract would have the effect of voiding the Marine Policy during shipping, a cargo insurance policy ("Cargo Policy") obtained by UYT from defendant Certain Underwriters at Lloyd's London ("Underwriters") was included in the price of the Shipping Contract.  DKT # 1, ¶§ 10, 11.  Plaintiff submitted a "true and correct" copy of a certificate confirming the Cargo Policy obtained by UYT as Exhibit C to its complaint which is incorporated into the complaint.  *Id.*

The complaint alleges that the Yacht suffered damage "while being loaded and shipped by UYT…." DKT # 1, ¶ 12. This damage is alleged to have occurred "after delivery of the vessel to the place for immediate loading and continued throughout transit due to rain water intrusion." *Id.* Raven and UYT are alleged to have failed to address "the damage which occurred during loading…." DKT # 1, ¶ 13. White Knight has "consistently alleged that the [Yacht] was damaged during the loading process and that damage continued throughout its transport." DKT # 1, ¶ 26.

White Knight tendered a claim under its Marine Policy, which was denied. DKT # 1, ¶ 15.

Following denial of coverage under the Marine Policy, White Knight sought coverage under the Cargo Policy, despite not being the named insured under that policy. DKT # 1, ¶ 16, and Ex. C thereto. UYT apparently also retained counsel under its general commercial liability policy, which appears to have resulted in confusion over coverage for the damage to the Yacht. DKT # 1, ¶¶ 23-25. On May 8, 2018, Wood informed White Knight that Underwriters had not formally received a claim from UYT relating to the Cargo Policy. DKT # 1, ¶ 31. Following its failure to obtain payment under the Cargo Policy, Plaintiff initiated this lawsuit.

The lawsuit alleges two claims against Wood: 1) intentional interference with contractual relations; and 2) negligent interference with prospective economic advantage.

## III. BOTH CAUSES OF ACTION AGAINST WOOD FAIL TO STATE A CLAIM

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." The 9th Circuit has settled on the following two step process for evaluating pleadings under Supreme Court precedent:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the

> elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). If a complaint does not provide sufficient allegations of underlying facts or, if those facts do not plausibly suggest an entitlement to relief, the complaint must be dismissed.

### A. Plaintiff Fails to State a Claim for Intentional Interference With Contractual Relations

A required element of intentional interference with contractual relations is the existence of an enforceable contract between the plaintiff and a third party which was allegedly interfered with. *See* CACI No. 2201 (stating that a required element for a claim of intentional interference with contractual relations is that there be a contract between plaintiff and a third party); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, 791 P.2d 587, 589 (1990) (stating that "a valid contract between plaintiff and a third party" is the first element of the claim).

Plaintiff cannot show that it had a valid contract with Underwriters with which Wood could interfere. The alleged contractual relationship is the Cargo Policy attached as Exhibit C to the complaint.[1] That document states that there has been "a Contract effected by H.W. Wood Limited (B0755C601737), of Lloyd's, <u>acting on behalf of United Yacht Transport</u>, with Underwriters at Lloyd's, for insurances attaching thereto…." DKT # 1, Ex. C, p. 1 (emphases modified). The

---

[1] "In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto." *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1118 (C.D. Cal. 2015).

1  certification goes on to state that "United Yacht Transport, are entitled to declare
2  against the said Contract insurances attaching thereto." *Id.* (emphases modified).
3  The insurance certificate declares that it is not valid unless signed by UYT, which
4  White Knight admits is the party that signed the document. *Id.*; DKT # 1, 11.  The
5  Cargo Policy makes several references to the "Insured's Loadmaster."  DKT # 1,
6  Ex. C, p. 2.  The Cargo Policy states that the Underwriters agree to waive
7  subrogation rights against UYT and its Loadmasters.  *Id.*

8  In fact the only reference to White Knight at all in the Cargo Policy is the
9  statement: "Underwriters agree losses, if any, shall be payable to the order of White
10 Knight Yacht, LLC."  *Id.* at p. 1.  White Knight's status as loss payee does not make
11 it a party to the Cargo Policy:

> If an insurance policy contains a loss-payable clause, the 'loss payee' does not claim as an assignee of the policy, but merely as an appointee to collect the insurance; consequently, he must claim in the right of the insured, and not in his own right.  <u>Because it is not a party to the insurance contract</u>, a loss payee may not recover absent any loss by the named insured.

19 *Argonaut Great Cent. Ins. Co. v. C&K Mkt., Inc.*, No. 6:15-CV-01466-MC, 2016
20 WL 2841207, at *3 (D. Or. May 12, 2016), aff'd, 716 F. App'x 638 (9th Cir. 2018)
21 (citations and quotations omitted) (emphasis added); *see also Travelers Prop. Cas.*
22 *Co. of Am. v. Superior Court*, 215 Cal. App. 4th 561, 571 n.13, 155 Cal. Rptr. 3d
23 459, 468 (2013) (refusing to treat loss payee as insured under insurance policy).

24 Because White Knight cannot show that it was a party to the Cargo Policy,
25 there is no enforceable contract between it and Underwriters.  The absence of an
26 enforceable contract makes it impossible for White Knight to demonstrate the first
27 element for a claim for intentional interference with contractual relations.  The
28 intentional interference with contractual relations claim must be dismissed.

### B. Plaintiff Fails to State a Claim for Negligent Interference With Prospective Economic Advantage

Similarly, White Knight's claim against Wood for interference with prospective economic advantage cannot stand because White Knight cannot sustain the first and fifth elements of that cause of action – that White Knight was in an economic relationship with Underwriters, and that Wood committed wrongful conduct.

CACI No. 2204 sets forth the required elements of a claim for negligent interference with prospective economic advantage. As is relevant here, the first element requires a showing that plaintiff and a third party "were in an economic relationship that probably would have resulted in future economic benefit to [plaintiff]." CACI No. 2204. The economic relationship between White Knight and Underwriters identified in the complaint is that of "insured/insurer." DKT # 1, ¶ 66. As discussed above, no such relationship exists between White Knight and Underwriters under the Cargo Policy.

Because White Knight has not alleged a valid economic relationship between it and Underwriters, it cannot demonstrate the first element of its negligent interference with prospective economic advantage against Wood.

The fifth element of a claim for negligent interference with prospective economic advantage requires a showing that the defendant engaged in "wrongful conduct." *Id.* According to the model jury instruction and case law, the question of whether conduct is "wrongful" is a question for the Court as a matter of law. In making this determination, it is plaintiff's burden to demonstrate that the act is "wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393, 902 P.2d 740, 751 (1995); *see LiMandri v. Judkins*, 52 Cal. App. 4th 326, 341, 60 Cal. Rptr. 2d 539, 546 (1997) (relying upon the Restatement Second of Torts to require that conduct be illegal, unfair, or immoral to be "wrongful" for interference with prospective

economic advantage).

In this matter, White Knight has not alleged any conduct by Wood which is illegal, unfair, or immoral. The entirety of White Knight's interaction with Wood as alleged in the complaint is that White Knight attempted to assert a claim against the Cargo Policy under which it was not an insured. Wood's response was that Underwriters had not formally been informed by UYT, the actual insured under the Cargo Policy, of a claim against the Cargo Policy.

As discussed above, White Knight cannot collect against the policy in its own right, but "must claim in the right of the insured." *Argonaut*, 716 F. App'x at *3. As a non-party to the Cargo Policy, White Knight "may not recover absent any loss by the named insured." *Id.*

Far from being illegal, unfair, or immoral, Wood's actions in consistently recognizing that only UYT could formally make a claim against its Cargo Policy were proper and lawful. Because the compliant reveals that Wood committed no illegal, unfair, or improper acts, White Knight has not alleged any "wrongful" conduct. Consequently, White Knight cannot establish the fifth element of its negligent interference with prospective economic advantage claim.

## IV. THIS COURT LACKS JURISDICTION

Even if White Knight's claims were properly pled, this Court would lack jurisdiction to hear them, requiring dismissal under Rule 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal quotation omitted).[2]

---

[2] This motion asserts a facial attack on jurisdiction, not a factual attack.

### A. Jurisdiction for Claims Involving the Cargo Policy Is Exclusively in England and Wales

The Cargo Policy contains the following provision:

> CHOICE OF LAW AND JURISDICTION
>
> This insurance is subject to the law practice of England and Wales and to the exclusive jurisdiction of the Courts of England and Wales.

DKT # 1, Ex. C, p. 3.

"Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514–15 (9th Cir. 1988) (quoting *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916 (1972)). "The opposing party has the burden 'to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Id.* See also *Kukje Hwajae Ins. Co. v. M/V HYUNDAI LIBERTY*, 408 F.3d 1250, 1255 (9th Cir. 2005) (enforcing Korean forum-selection clause in bill of lading after Supreme Court summarily vacated contrary order).

Here, plaintiff cannot meet its burden to show that enforcement of the forum-selection clause would be improper. The Cargo Policy is an insurance contract between Underwriters (in London) and UYT (a Delaware insured with its principal place of business in Florida) which holds itself out as providing yacht transport services worldwide. The insurance related to acts taken in Canada en route to Mexico. Far from being unreasonable, it appears that England/Wales is an eminently reasonable jurisdictional choice for such a transaction.

There is no allegation or suggestion that the forum-selection clause in the Cargo Policy was the result of fraud or overreaching. UYT holds itself out as

1  providing yacht transport services worldwide.  Contracting with Underwriters in
2  well-known, reputable insurance market historically renowned for maritime
3  insurance and with deep ties to world insurance markets would be a prudent choice,
4  not a fraudulent one.   England/Wales is a reasonable forum-selection for such
5  contracts.
6        Further, trial in England or Wales would not deprive Plaintiff of its day in
7  court.  These courts have a fair reputation for justice, a conclusion echoed by U.S.
8  case law.  *See, e.g., M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S. Ct.
9  1907, 1914, 32 L. Ed. 2d 513 (1972) ("[T]he courts of England meet the standards
10 of neutrality and long experience in admiralty litigation."); *SeeComm Network
11 Servs. Corp. v. Colt Telecommunications*, No. C 04-1283 MEJ, 2004 WL 1960174,
12 at *9 (N.D. Cal. Sept. 3, 2004) ("[T]he Court finds that Plaintiff was not denied a
13 meaningful day in court in England….").
14       Finally, Wood anticipates that White Knight will argue that because its claims
15 against Wood do not seek enforcement of the Cargo Policy itself, but rather torts
16 stemming from the Cargo Policy, that the forum-selection clause is inapplicable to
17 the tort claims.  However, "forum selection clauses can be equally applicable to
18 contractual and tort causes of action."  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858
19 F.2d 509, 514 (9th Cir. 1988) (internal quotations omitted).  "Whether a forum
20 selection clause applies to tort claims depends on whether resolution of the claims
21 relates to interpretation of the contract."  *Id.*  The court "must, therefore, determine
22 if [the tort] claims require interpretation of the contract."  *Id.*
23       The two tort claims in this action are highly intertwined with interpretation of
24 the Cargo Policy.  Among the allegations in the intentional interference with
25 contractual relations claim against Wood are:
26     -  "a valid insurance agreement existed between WHITE KNIGHT and
27        LLOYDS' [sic]…."  DKT # 1, ¶ 54.
28     -  "H.W. WOOD necessarily knew of the insurance contract because H.W.

CLYDE & CO US LLP
2020 Main Street, Suite 1100
Irvine, California 92614
Telephone: (949) 852-8200

CLYDE & CO US LLP
2020 Main Street, Suite 1100
Irvine, California 92614
Telephone: (949) 852-8200

WOOD is the insurance broker through which LLOYDS [sic] undertook to issue the policies of insurance, including the Cargo Policy, which named WHITE KNIGHT as an assured….” *Id.* at ¶ 55.

- "H.W. WOOD misdirected WHITE KNIGHT regarding the parties responsible for handling the claim….” *Id.* at ¶ 56.

Among the allegations in the negligent interference with contractual relations claim against Wood are:

- "WHITE KNIGHT and LLOYDS [sic] were in an economic relationship, namely that of insured/insurer which would and should have resulted in an economic benefit to WHITE KNIGHT." DKT # 1, ¶ 66.
- "H.W. WOOD knew or should have known of this relationship." DKT # 1, ¶ 67.
- "H.W. WOOD knew or should have known that this relationship would be disrupted if it failed to act with reasonable care." DKT # 1, ¶ 68.
- "H.W. WOOD engaged in wrongful conduct by failing to report a claim to LLOYDS' [sic] that they were under an obligation to report and by misdirecting WHITE KNIGHT regarding the status of their claim." DKT # 1, ¶ 70.
- "The relationship between WHITE KNIGHT and LLOYDS [sic] has been disrupted and WHITE KNIGHT has not received the benefits due under the policy…." DKT # 1, ¶ 71.

Because these claims necessarily involve interpretation of the Cargo Policy, they are also subject to the exclusive jurisdiction of England and Wales.

**B. There is No Maritime Jurisdiction for this Claim**

Plaintiff's sole basis for jurisdiction in this Court is 28 U.S.C. § 1333, the maritime jurisdiction statute. *See* DKT #1, ¶ 1.

"[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of

connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995). As to the location, the Court must determine whether the tort "occurred on navigable water or whether injury suffered on land by a vessel on navigable water." *Id.*

The only allegations relating to where the Yacht incurred damage are that it incurred damage "while being loaded and shipped," that the damage occurred "after delivery of the vessel to the place for immediate loading and continued throughout transit," that damage "occurred during loading," and that the Yacht "was damaged during the loading process and that damage continued throughout its transport." DKT # 1, ¶¶ 12, 13, 26.

From these allegations, several facts are clear:  1) the initial damage was incurred at loading in Canada; 2) the Yacht is never alleged to actually have been in the territorial waters of the United States; and 3) any damage incurred during transit was not the result of a separate incident, but rather a continuation of the initial damage in Canada without which the further damage would not have occurred.

Each fact dictates against the exercise of admiralty jurisdiction in this Court. First, the Court's admiralty jurisdiction does not extend to matters which occurred on land, such as the loading of the Yacht. *See Victory Carriers, Inc. v. Law*, 404 U.S. 202, 207, 92 S. Ct. 418, 422, 30 L. Ed. 2d 383 (1971) (noting that "[t]he gangplank has served as a rough dividing line" for maritime jurisdiction).[3]

Second, regardless of whether the loading damage occurred on land or in sea, the complaint alleges that it happened in Canada.  As such, the incident giving rise to this lawsuit occurred outside of the jurisdiction of this Court.

Third, while the complaint does allege that the Yacht continued to incur damage after the initial damage, it also admits that any subsequent damage was

---

[3] Indeed, it appears that the delay in payment of damage to the Yacht stems a dispute between carriers regarding at what point "loading" is said to have occurred. As a broker, Wood has no part or say in the issue.

merely a continuation of the initial damage. Consequently, the cause of any damage alleged in the complaint stems from the initial damage incurred in Canada.

Because the face of the complaint does not support a finding that maritime jurisdiction is properly invoked, this matter must be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

## V. VENUE

Rule 12(b)(3) provides that a party may file a motion to dismiss on the basis of improper venue. "The plaintiff has the burden of showing that venue is proper in this district." *Allstar Mktg. Grp., LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009). "When there are multiple parties and/or multiple claims in an action, the plaintiff must establish that venue is proper as to each defendant and as to each claim." *Id.* (internal citations omitted).

### A. Venue is Improper

The provision of the Cargo Policy creating exclusive jurisdiction in England or Wales for this matter dictates that venue is improper in any other jurisdiction. Because this analysis merges into that of Section III(A) above, no further discussion is warranted.

### B. Forum Non Conveniens

Even assuming venue were proper, the Court should still dismiss this matter because more appropriate forums exist.

"A party seeking dismissal of an action on *forum non conveniens* grounds must show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. *Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009).

The private interest factors to be weighed in a forum non conveniens inquiry are:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical

> evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 1206–07.

This matter involves a contract between White Knight (a Delaware entity) and UYT (a Delaware entity with its principal place of business in Florida), to move a yacht from Canada to Mexico. UYT (a Delaware entity) entered into an insurance contract with Underwriters (London-based insurance syndicates) through H.W. Wood (a London-based broker) relating to the contract between the Delaware entities. Damage was incurred in Canada and discovered in Mexico. Following a factual dispute in Canada regarding when a boat can fairly be said to be "loaded," White Knight (a Delaware entity) sued UYT (a Delaware entity), H.W. Wood (a London-based broker) and Underwriters (London-based insurance syndicates). How this fact pattern leads to jurisdiction in Southern California is entirely unclear.

Given these facts, it would appear that all of the relevant evidence, witnesses, and documents are located in London, Vancouver, or even Ensenada, each of which would be a more suitable venue than this Court.

The public-interest factors in determining proper venue are: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Id.* at 1211.

The only local interest in this matter is apparently that this is where White Knight unilaterally decided to dock the Yacht. To find that jurisdiction is proper merely because this is where plaintiff unilaterally placed the underlying property would permit a plaintiff to unilaterally select any jurisdiction in the world.

This matter will involve interpretation and enforcement of the Cargo Policy,

CLYDE & CO US LLP
2020 Main Street, Suite 1100
Irvine, California 92614
Telephone: (949) 852-8200

which is required to be decided under the laws of England and Wales.  Given the complete absence of connection between this Court and the underlying dispute, trying this matter here would do nothing but waste limited legal resources.

For the foregoing reasons, if the Court determines not to dismiss this matter for other reasons, this matter should be dismissed so that the underlying legal disputes can be heard in a more appropriate forum.

## VI.   CONCLUSION

For the foregoing reasons, Wood respectfully requests that the Court dismiss White Knight's third and fifth causes of action for failure to state a claim, dismiss the entire matter for lack of subject-matter jurisdiction, or dismiss this matter for improper forum or forum non conveniens.

Dated:  February 5, 2019          CLYDE & CO US LLP


By: s/ Curtis D. Parvin
    Curtis D. Parvin
    Attorneys for H.W. WOOD LIMITED
    Email: curtis.parvin@clydeco.us

# CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 2020 Main Street, Suite 1100, Irvine, CA 92614.

On February 5, 2019, I served true copies of the following document(s) described as **DEFENDANT H.W. WOOD LIMITED'S MOTION TO DISMISS** on the interested parties in this action as follows:

| | |
|---|---|
| Michael B. McDonnell<br>Douglas M. Field<br>Novare Law Group<br>2040 Harbor Island Drive, Suite 202<br>San Diego, California 92101 | Attorneys for Plaintiff WHITE KNIGHT YACHT, LLC<br><br>Telephone: (619) 294-4230<br>Facsimile: (619) 294-4237<br>Email: michael@novarelawgroup.com<br>Email: dfield@novarelawgroup.com |
| Pamela L. Schultz<br>Hinshaw & Culbertson, LLP<br>One California Street, 18th Floor<br>San Francisco, California 94111 | Attorneys for Defendant CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO UNIQUE MARINE CARGO INSURANCE POLICY NO. 601737 (erroneously sued as "Certain Lloyds at Lloyd's London and Other London Market Insurers")<br><br>Telephone: (415) 362-6000<br>Facsimile: (415) 834-9070<br>Email: pschultz@hinshawlaw.com |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 5, 2019, at Irvine, California.

*/s/ Gloria Zwibel*
Gloria Zwibel

# CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 2020 Main Street, Suite 1100, Irvine, CA 92614.

On February 5, 2019, I served true copies of the following document(s) described as **DEFENDANT H.W. WOOD LIMITED'S MOTION TO DISMISS** on the interested parties in this action as follows:

Corporation Service Company　　　　Registered Agent for Service of Process
251 Little Falls Drive　　　　　　　　　for Defendant UNITED YACHT
Wilmington, DE 19808　　　　　　　　TRANSPORT LLC

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Clyde & Co US LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Irvine, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 5, 2019, at Irvine, California.

*/s/ Gloria Zwibel*
Gloria Zwibel

4283703　　　　　　　　　　　　　　2　　　　　　　　　　Case No. 3:18-cv-02616-BAS-BLM
CERTIFICATE OF SERVICE