1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WHITE KNIGHT YACHT LLC, | Case No. 18-cv-02616-BAS-BLM |
| Plaintiff, | **ORDER:** |
| v. | **(1) GRANTING DEFENDANTS CERTAIN LLOYDS AT LLOYD'S LONDON'S AND H.W. WOOD LIMITED'S MOTIONS TO DISMISS [ECF Nos. 11, 13];** |
| CERTAIN LLOYDS AT LLOYD'S LONDON AND OTHER LONDON MARKET INSURERS, *et al*., | |
| Defendants. | **(2) GRANTING DEFENDANT UNITED YACHT TRANSPORT LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [ECF No. 33];** |
| | **AND** |
| | **(3) TERMINATING AS MOOT DEFENDANT H.W. WOOD LIMITED'S MOTION TO STRIKE [ECF No. 12]** |

California-based Plaintiff White Knight Yacht LLC ("White Knight") arranged for transportation of a Yacht—*White Knight*—from Victoria, Canada to Ensenada, Mexico, pursuant to a shipping contract ("Shipping Contract") with

Washington state-based Raven Offshore Shipping LLP ("Raven"). Raven is not a party to this lawsuit.[1]

Raven further contracted with Delaware and Florida-based Defendant United Yacht Transport LLC ("UYT") to perform the actual transport. The Yacht was insured under an insurance policy through non-party International Marina Underwriters ("IMU") (the "Marine Policy"), but because IMU told Plaintiff certain Shipping Contract provisions would void the Marine Policy during transport, Plaintiff contracted with Raven for additional insurance during transport.

Thus, the Shipping Contract included the cost of cargo insurance to cover *White Knight* during transport. UYT obtained a cargo insurance policy (the "Cargo Policy") via England-based Defendant insurance broker H.W. Wood Limited ("H.W. Wood"), who obtained the Cargo Policy from England-based Defendant Certain Lloyds at Lloyd's London and Other London Market Insurers ("Lloyds").

When the Yacht was allegedly damaged during transport, Plaintiff sought recovery from: non-party IMU, non-party Raven, and now, in this lawsuit, UYT, H.W. Wood, and Lloyds.

Lloyds and H.W. Wood each move to dismiss Plaintiff's claims on various grounds, including that the Cargo Policy's forum selection clause provides for exclusive jurisdiction in the Courts of England and Wales. (ECF Nos. 11, 13, 22, 26.) Plaintiff opposes in a consolidated opposition. (ECF No. 19.) H.W. Wood also moves to strike Plaintiff's request for punitive damages. (ECF Nos. 12, 24.) Plaintiff opposes. (ECF No. 18.) And, after filing an answer to the Complaint, UYT separately moves to dismiss Plaintiff's claims against it for lack of personal jurisdiction and improper venue. (ECF Nos. 33, 35.) Plaintiff opposes. (ECF No. 34.) For the reasons herein, the Court: (1) grants Defendants Lloyds' and H.W.

---

[1] Raven is not a party because the Shipping Contract contains an arbitration provision. (ECF No. 19-2, Chris Ashby Decl. ¶ 24; *see also* ECF No. 13-1 (noting that "Plaintiff has already commenced arbitration against Raven, which is ongoing").)

1  Wood's motions to dismiss based on the Cargo Policy's forum selection clause; (2)

2  terminates H.W. Wood's motion to strike punitive damages, and (3) grants UYT's

3  motion to dismiss for lack of personal jurisdiction.

4

5  **RELEVANT BACKGROUND**

6  **A.    Factual Background**

7  Plaintiff is a limited liability company organized and existing under Delaware

8  law.  (ECF No. 1, Compl. ¶ 2.)  Plaintiff sought to have the Yacht transported from

9  Victoria, Canada to Ensenada, Mexico in April 2017.  (*Id.* ¶¶ 7–8, Ex. B at 1, Ex. C

10  at 1.)  Chris Ashby, Plaintiff's president and CEO, is not a named plaintiff, but he

11  entered into the Shipping Contract on Plaintiff's behalf and tendered Plaintiff's

12  payment for the contract's cost.  (ECF No. 19-2, Chris Ashby Decl. ¶ 1.)

13

14  Each of the Defendants has some relationship with the Cargo Policy.  Lloyds

15  is the insurer that issued the Cargo Policy.  (Compl. ¶¶ 3, 11, Ex. C (copy of the

16  Cargo Policy).)  H.W. Wood is the insurance broker that acquired the Cargo Policy.

17  (*Id.* ¶¶ 5, 10, Ex. C at 2.)  And UYT's vice president allegedly signed the Cargo

18  Policy "for the purposes of binding [Lloyds] to the insurance contract."  (*Id.* ¶ 11.)

19

20  **1.    The Shipping Contract and Cargo Policy**

21  The Yacht was insured under an insurance policy through non-party IMU (the

22  "Marine Policy") at the time of the Yacht's shipment from Canada to Mexico.

23  (Compl. ¶ 7, Ex. A.)  However, IMU apparently represented to Plaintiff that certain

24  Shipping Contract provisions would have the effect of voiding the Marine Policy

25  during its transport.  (*Id.* ¶¶ 9–10.)

26

27  Plaintiff alleges that "prior to entering the Shipping Contract, Rick Gladych,

28  on behalf of Raven, represented to Chris Ashby that the cargo insurance offered by

[Lloyds] and included in the price of the shipping contract bearing Policy No. C21867/2016 (the 'Cargo Policy'), would cover *White Knight* from the time the Yacht was moved to the place for loading until it was delivered." (*Id.* ¶ 10.) The Shipping Contract reflects a total transport price of $48,876.00 USD, which included the cost of Lloyds' cargo insurance. (Compl. Ex. B at 1, 7–9.) Plaintiff entered into the Shipping Contract with Raven. (Compl. ¶ 8, Ex. B.) Ashby reviewed the Shipping Contract's terms and signed the Shipping Contract on April 5, 2017, which he then returned to Raven. (*Id.* at 2, 15; Ashby Decl. ¶ 13.)

The Cargo Policy was effectuated after Ashby's initial review of the Shipping Contract, but before Ashby tendered Plaintiff's payment for the Shipping Contract. The Policy indicates that H.W. Wood, "acting on behalf of United Yacht Transport," deposited a certificate of insurance with Lloyds in accordance with a general insurances contract H.W. Wood possessed with Lloyds. (Compl. Ex. C at 1.) Under the certificate, Plaintiff would be insured up to $700,000 for the April 25, 2017 shipment of the Yacht. Gail Ryan, UYT's vice president, signed the Cargo Policy on April 25, 2017, which rendered the Cargo Policy valid. (*Id.*) The Cargo Policy indicates that any claim notice under the policy should be provided to Lloyds' agent Pablo Ruiz Lara, for whom the certificate provides contact information. (*Id.*) The Cargo Policy indicates that "[i]n the event of loss or damage which may result in a claim under this Insurance, immediate notice must be given to the [Lloyds'] agent at the port or place where the loss or damage is discovered in order that they may examine the goods and issue a survey report." (*Id.*) The Cargo Policy also provides that "[t]his insurance is subject to the law and practice of England and Wales and to the exclusive jurisdiction of the Courts of England and Wales." (*Id.* at 3.) The day after Ryan signed the Cargo Policy, Ashby tendered Plaintiff's payment for the Shipping Contract, inclusive of the Cargo Policy's cost, by wiring money to Raven. (*Compare* Compl. Ex. C, *with* ECF No. 19-1 Ex. 2.)

– 4 –

### 2. Plaintiff's Discovery of Alleged Damage to the Yacht During Shipment and Its Attempts to Seek Coverage for Repair Cost

Plaintiff alleges that the Yacht suffered damage to its hull and interior "while being loaded and shipped by UYT under the Shipping Contract." (Compl. ¶ 12.) The damage occurred "after delivery of the vessel to the place for immediate loading and continued throughout transit due to rain water intrusion." (*Id.*) Upon seeing the alleged damage, Ashby confronted Gladych, who initially "assured [] Ashby that he [on behalf of Raven] would pay to have the damage to *White Knight* repaid," but Gladych, at some point, "revoked his promise once he learned the extent of the damage." (*Id.* ¶ 14.) Plaintiff also tendered a claim under its Marine Policy to IMU to cover the cost to repair the damage, which IMU denied on the ground that certain provisions of the Shipping Contract voided Plaintiff's coverage. (*Id.* ¶ 15.)

Apparently after these unsuccessful attempts and over eight months after the date of the alleged loss, Plaintiff "formally tendered the loss to [Lloyds]" to Pablo Ruiz Lara on January 4, 2018. (*Id.* ¶ 16, Ex. C at 3.) During this period, the entity Plaintiff contracted to repair the Yacht ceased work on the repairs because there was no source of payment. (*Id.* ¶ 18.) Plaintiff sent a follow-up letter to Lara on February 7, 2018. (*Id.* ¶ 16.) That day, Plaintiff's counsel was advised by another employee at the company where Lara worked that "[w]e are a company of surveyors and we have not been assigned this claim[.]" (ECF No. 19-1 Ex. 5.) The employee indicated that Lloyds had identified Sarah Martin of H.W. Wood as the proper correspondent for future correspondence regarding the claim. (*Id.*)

Plaintiff then forwarded its claim to Martin on February 8, 2018. (Compl. ¶ 20.) Plaintiff sent a follow-up letter dated February 27, 2018 after receiving no response. (*Id.*) Martin advised Plaintiff on February 28, 2018 that "Frilot Law"—

an entity known to Plaintiff as Frilot LLC and with which Plaintiff "was familiar" because the entity represented Raven under Raven's "CGL Policy"—was dealing with the matter.  (*Id.* ¶ 21.)  Plaintiff communicated with Frilot LLC for a few weeks until a partner informed Plaintiff that Frilot LLC was not handling potential liability under the Cargo Policy, but only represented Raven under Raven's general liability policy.  (*Id.* ¶¶ 22–25.)

Plaintiff alleges that on March 19, 2018, Martin informed Plaintiff that she had never tendered the claim to Lloyds "as directed."  (*Id.* ¶ 28.)  Plaintiff demanded that "she immediately tender the claim as [Plaintiff] had directed back in January[.]"  (*Id.* ¶ 29.)  Thereafter, Martin advised that she was in communication with Lloyds.  (*Id.* ¶ 30.)  On May 8, 2018, Martin emailed Plaintiff stating, "[Lloyds] have advised they are awaiting a full response from 'their' insured, UYT, as they have still not formally informed us that they have received a claim in this regard."  (*Id.* ¶ 31.)  On July 30, 2018, after Plaintiff threatened suit against Lloyds absent a coverage position, Martin "stated that she was the insurance broker acting on behalf of UYT," and she was "confused and concerned" about Plaintiff referring "to a policy containing the named assured of White Knight subject to the conditions of the policy number C21867/2016[.]"  (*Id.* ¶ 33.)  Plaintiff alleges that this is the same policy under which it had been attempting to make a claim since January 2018.  (*Id.* ¶ 34.)

## B.    Procedural History

Following its multiple unsuccessful attempts to obtain coverage for the cost to repair the alleged damage to the Yacht, Plaintiff initiated this lawsuit against Lloyds, H.W. Wood, and UYT on November 14, 2018.  (ECF No. 1.)

At the heart of this suit is the Cargo Policy.  In the first instance, Plaintiff raises two contract-based claims against Lloyds for (1) allegedly breaching its duty

of good faith and fair dealing under the Cargo Policy, (*id.* ¶¶ 36–45), and (2) allegedly breaching the Cargo Policy "by refusing to properly handle" Plaintiff's claim and "refusing to properly compensate" Plaintiff's "insured loss," (*id.* ¶¶ 46–52).

Against the backdrop of these contract-based claims, Plaintiff raises two tort claims against both H.W. Wood and UYT for alleged intentional and negligent interference with the relationship between Plaintiff and Lloyds under the Cargo Policy. Specifically, Plaintiff claims that H.W. Wood intentionally interfered with the Cargo Policy because Martin allegedly "misdirected" Plaintiff "regarding the parties responsible for the claim" and "misdirected" Plaintiff "as to her role in the claim," which "contributed to the undue delay in" Lloyds processing Plaintiff's claim. (*Id.* ¶¶ 53–57.)

Plaintiff similarly claims that UYT intentionally interfered "with the insurance contract between [Plaintiff] and [Lloyds]." (*Id.* ¶¶ 58–64.) UYT allegedly did so by failing to respond to Plaintiff's claim—despite that Lloyds, Raven, and Plaintiff had contacted UYT "regarding [UYT's] purported duty to report the claim to [Lloyds][.]" (*Id.* ¶¶ 58–64.) Plaintiff also claims that H.W. Wood negligently interfered with Plaintiff's prospective economic advantage because H.W. Wood knew of the Cargo Policy and allegedly "failed to act with reasonable care" regarding Plaintiff's claim, "fail[ed] to report a claim to [Lloyds] that they were under an obligation to report," and "misdirect[ed] [Plaintiff] regarding the status of their claim." (*Id.* ¶¶ 65–73.) UYT allegedly negligently interfered with Plaintiff's "economic relationship" with Lloyds because UYT "failed to act with reasonable care" "by failing to report a claim to [Lloyds] that they were under an obligation to report[.]" (*Id.* ¶¶ 74–82.)

On March 26, 2019, H.W. Wood moved to dismiss Plaintiff's intentional and negligent interference with economic advantage claims pursuant to Rule 12(b) on various grounds, including that: (1) this Court lacks jurisdiction because the Cargo Policy is subject to exclusive jurisdiction in the Courts of England and Wales pursuant to the Cargo Policy's forum selection clause and because Plaintiff fails to adequately invoke federal maritime jurisdiction under 28 U.S.C. § 1333; (2) venue in the Southern District of California is improper under the federal venue statute, 28 U.S.C. § 1391; and (3) Plaintiff fails to state claims against H.W. Wood because Plaintiff is not a party to the Cargo Policy. (ECF No. 11.) H.W. Wood filed a separate Rule 12(f) motion to strike Plaintiff's requests for punitive damages. (ECF No. 12.)

On the same day, Lloyds moved to dismiss Plaintiff's breach of contract and breach of the duty of good faith and fair dealing claims against it. (ECF No. 13.) Lloyds argues that: (1) the Court lacks personal jurisdiction over Lloyds; (2) alternatively, the Cargo Policy's forum selection clause means that venue is improper; (3) Plaintiff's California tort claims must be dismissed because the only claims Plaintiff can raise are under the laws of England and Wales; and (4) this action must be dismissed under the doctrine of forum *non conveniens*, as modified in the context of a forum selection clause. (*Id*.)

After the completion of briefing on Lloyds' and H.W. Wood's motions to dismiss, UYT answered the Complaint on April 5, 2019. (ECF No. 27.) UYT raised lack of personal jurisdiction and improper venue as "affirmative defenses." (*Id*. at 12.) UYT then moved to dismiss Plaintiff's claims on June 17, 2019 for lack of personal jurisdiction over UYT under Rule 12(b)(2) and improper venue under Rule 12(b)(3). (ECF No. 33.) The Court turns to the merits of Defendants' motions.

## THE CARGO POLICY'S FORUM SELECTION CLAUSE

Although H.W. Wood and Lloyds raise multiple grounds for dismissal of Plaintiff's claims, the Court finds dispositive their arguments regarding the Cargo Policy's forum selection clause. Accordingly, the Court limits its analysis to the forum selection clause. The Court's analysis is further limited to these Defendants because UYT does not move to dismiss for forum *non conveniens* based on the forum selection clause.

## A.    Legal Standard

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum *non conveniens*."[2] *Atl. Marine Constr. Co., v. U.S. Dist. W. Dist. Tex.*, 571 U.S. 49, 60 (2013); *see also Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018). "If dismissal under forum *non conveniens* is appropriate, the court need not address other grounds for dismissal." *Nibirutech Ltd. v. Jang*, 75 F. Supp. 3d 1076, 1079 (N.D. Cal. 2014). Once a district court determines that the appropriate forum is located in a foreign country, the court may dismiss the case. *Cheng v. Boeing Co.*, 708 F.2d 1406, 1409 (9th Cir. 1983).

Under a traditional forum *non conveniens* analysis, "[a] party moving to dismiss based on forum non conveniens bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (citation omitted). The public interest factors include: "(1) the local

---

[2] H.W. Wood contends that a motion based on a forum selection clause is governed by Rule 12(b)(1), (ECF No. 11 at 6), while Lloyds contends that it is governed by Rule 12(b)(6), (ECF No. 13–1 at 8). Regardless of the procedural vehicle, Lloyds correctly addresses the forum selection clause under the doctrine of forum *non conveniens*. As such, the Court finds that the appropriate framework has been identified.

interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms. Group, Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)).  The private interest factors are: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 1206–07.

Ordinarily, when evaluating a motion to dismiss on grounds of forum *non conveniens*, "a plaintiff's choice of forum will not be disturbed unless the private interest and the public interest factors strongly favor trial" in a foreign jurisdiction. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).  "The calculus changes . . . when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine*, 571 U.S. at 63.  If the court finds that the forum selection clause is valid, the plaintiff then bears the burden to establish that the forum for which the parties bargained is unwarranted under the forum *non conveniens* framework.  *Id.*  A valid forum selection clause renders the private interest factors irrelevant, thereby leaving the court to consider only the public interest factors.  *Id.* at 64.  "The practical result is that forum-selection clauses will almost always control." *Key Equip. Fin. v. Barrett Bus. Servs., Inc.*, No. 3:19-cv-05122-RBL, 2019 WL 2491893, at *3 (W.D. Wash. June 14, 2019) (citations and internal quotations omitted).

//

//

//

**B.     Application**

To determine whether the Cargo Policy's forum selection clause requires dismissal of Plaintiff's claims against Lloyds and H.W. Wood under the forum *non conveniens* framework, the Court considers: (1) whether Plaintiff's claims fall within the clause's scope, (2) whether the clause is valid and enforceable under federal law, and, assuming the answer to the first and second considerations is yes, (3) whether Plaintiff has met its burden to show that the public interest factors counsel against dismissal. *Primary Color Sys. Corp. v. Agfa Corp.*, No. SACV 17-00761-JVS (DFMx), 2017 WL 8220729, at *3 (C.D. Cal. June 13, 2017).

**1.     The Forum Selection Clause Encompasses Plaintiff's Claims Against Lloyds and H.W. Wood**

The first issue the Court must address is whether Plaintiff's claims fall within the forum selection clause's scope. *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013). If Plaintiff's claims are outside the clause's scope, then the Court's analysis ends and dismissal is not warranted. *See Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1141–43 (C.D. Cal. 2018).

The Cargo Policy's forum selection clause provides in full that: "[t]his insurance is subject to the law and practice of England and Wales and *to the exclusive jurisdiction of the Courts of England and Wale*s." (Compl. Ex. C at 3 (emphasis added).) As part of a contract, the clause is interpreted according to standard contract interpretation principles. "[T]he common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (quotations and citation omitted). The Cargo Policy plainly designates the Courts of England and Wales as the courts with exclusive jurisdiction over the Cargo Policy in mandatory language. *See N. Cal. Dist. Council of Laborers*

*v. Pittsburgh-Des Moines Steel Co*., 69 F.3d 1034, 1037 (9th Cir. 1995) (recognizing that a mandatory forum selection clause designates a forum as the exclusive forum).

As Lloyds argues, (ECF No. 13-1 at 8–9), Plaintiff's two contract claims against Lloyds plainly fall within the scope of the Cargo Policy's forum selection clause. Plaintiff claims that Lloyds breached its contractual duty to pay Plaintiff's insurance claim under the Cargo Policy and also breached a duty of good faith and fair dealing Lloyds owed to Plaintiff under the Cargo Policy. (Compl. ¶¶ 36–52.) These claims are ones that paradigmatically fall within a contractual forum selection clause. *See, e.g.*, *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co*., 60 F. Supp. 3d 1109, 1119 (E.D. Cal. 2014).

A forum selection clause may apply equally to tort claims, such as the two tort claims that Plaintiff raises against H.W. Wood. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (concluding that claims of tortious interference with prospective economic advantage relations were covered by a forum selection clause). "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Id*.

H.W. Wood argues that resolution of Plaintiff's tort claims against it will require interpretation of the Cargo Policy and, thus, the forum selection clause applies. (ECF No. 11 at 8–9.) The Court agrees. Plaintiff expressly premises each of these claims on the allegations that there was a valid contract between it and Lloyds that named Plaintiff as an assured, with which H.W. Wood interfered by allegedly misdirecting Plaintiffs about "the parties responsible for handling the claim." (Compl. ¶¶ 54–56, 66.) In its negligent interference claim, Plaintiff further claims that H.W. Wood had "an obligation to report" Plaintiff's insurance claim to Lloyds. (*Id.* ¶ 70.) As pleaded, Plaintiff's tort claims against H.W. Wood flow from

the purported obligations amongst the parties under the Cargo Policy, thus bringing the claims within the clause's scope. *See Morgan Tire of Sacramento, Inc.*, 60 F. Supp. 3d at 1119. That Plaintiff has failed to argue that its tort claims against H.W. Wood fall outside the clause's scope—despite H.W. Wood expressly identifying this as a relevant issue to enforcement of the clause—underscores for the Court that Plaintiff concedes this issue. Accordingly, the Court finds that the forum selection clause applies to Plaintiff's claims against both Lloyds and H.W. Wood.

## 2. The Cargo Policy's Forum Selection Clause is Valid and Enforceable

The Court's second inquiry is whether the forum selection clause is valid and enforceable. Federal law governs a forum selection clause's validity. *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (internal quotations omitted); *Manetti-Farrow*, 858 F.2d at 514. A forum selection clause may be unreasonable for one of three reasons: (a) "the inclusion of the clause in the agreement was the product of fraud or overreaching"; (b) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (c) "enforcement would contravene a strong public policy of the forum in which suit is brought." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998)). Because Plaintiff does not make any argument that enforcement of the forum selection clause would contravene a strong public policy, the Court limits its analysis to the first and second considerations and concludes that Plaintiff fails to make a showing on either ground.

### a. Plaintiff Does Not Demonstrate that the Clause Is the Product of Fraud or Overreaching

For a court to deny enforcement of a forum selection clause based on fraud or overreaching, a party must show that "the inclusion of that clause in the contract was the product of fraud or coercion." *Richards*, 135 F.3d at 1297 (emphasis in original) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518 (1974)). A party must introduce "specific facts, contained in an admissible affidavit" that are "sufficient, if true, to demonstrate that the forum selection's clause inclusion in the . . . agreement was obtained via fraud or overreaching." *Petersen*, 715 F.3d at 283. The Court considers (i) whether Plaintiff had the opportunity to become meaningfully informed of the forum selection clause and (ii) whether Plaintiff may be bound by the Cargo Policy's forum selection clause.

### i. Plaintiff Had the Opportunity to Become Meaningfully Informed of the Forum Selection Clause

Plaintiff opposes dismissal of its claims against Lloyds and H.W. Woods by arguing that it is not a sophisticated business entity and therefore the clause should not be enforced against it. (ECF No. 19 at 20.) Chris Ashby, Plaintiff's CEO and President, similarly contends that the transaction was not a business transaction because the Yacht is a "pleasure yacht" and "White Knight is not a commercial enterprise." (Ashby Decl. ¶¶ 35–36.) The Court considers and rejects Plaintiff's arguments.

A forum selection clause is not unenforceable merely because parties have unequal bargaining power so long as the clause was reasonably communicated to the party or the party could have learned of its existence. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). The first issue a court should therefore consider is whether the clause was reasonably communicated to the plaintiff. *See Wallis v.*

*Princess Cruises, Inc*., 306 F.3d 827, 835 (9th Cir. 2002).  The court should take into account the clause's physical characteristics and whether the plaintiff had the ability to become meaningfully informed of the clause and to reject its terms.  *Id*. at 835–36.  The conditions of a form contract may be enforceable even if not read or negotiated by the challenging party, so long as that party was afforded the opportunity to do so.  *See Murphy*, 362 F.3d at 1140; *Deiro v. Am. Airlines, Inc*., 816 F.2d 1360 (9th Cir. 1987) (holding the passenger of a common carrier contractually bound by the fine-print liability limitations in the passenger ticket).

Plaintiff does not challenge the presentation of the forum selection clause in the Cargo Policy.  Instead, as the Court has noted, Plaintiff contends that it is not a sophisticated business entity.  Plaintiff's President and CEO attempts to disavow knowledge of the clause's existence.  Ashby acknowledges that he agreed to enter the Shipping Contract on behalf of White Knight and that he agreed to purchase the Cargo Policy with the "understanding that the Shipping Contract resulted in White Knight becoming an assured of [Lloyds]" due to representations from Raven's Rick Gladych that a Cargo Policy with Lloyds could be purchased as part of the Shipping Contract.  (Ashby Decl. ¶¶ 3–6.)  Ashby contends, however, that he was never "advise[d] . . . that the contract of insurance would contain a foreign selection clause which would require me to pursue policy benefits in Great Britain." (*Id.* ¶ 7.)  Ashby otherwise contends that he was not aware of the particular process by which the insurance was obtained, nor the role of UYT and H.W. Wood.  (*Id*. ¶¶ 15–16.)  The Court is not persuaded that this record precludes enforcement of the Cargo Policy's forum selection clause.

For one, despite Plaintiff's averments in this litigation of lack of sophistication, Plaintiff is a corporate entity that was established with its sole asset as the Yacht.  (Ashby Decl. ¶ 37.)  Second, the allegations and record do not show

that Plaintiff is inexperienced in insurance or insurance disputes. Plaintiff had already entered into a marine insurance transaction before the events leading to this case. In fact, through Ashby, Plaintiff secured marine insurance from non-party IMU for the Yacht prior to entering into the Shipping Contract. (Compl. Ex. A.) Further, the inclusion of a foreign selection clause in an insurance contract is not surprising. "Forum selection clauses are in rather widespread use throughout the insurance industry." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1218 (3rd Cir. 1991). Tellingly, Ashby does not himself take issue with the inclusion of a forum selection clause in the Cargo Policy, but rather with its designation of a foreign forum.

The Complaint and Ashby's declaration otherwise leave the Court with the impression that Plaintiff had the ability to learn of and understand the foreign forum selection clause in the Cargo Policy. For one, despite averring that no one advised him of the Cargo Policy's foreign forum selection clause, Ashby expressly indicates that he expressly reviewed the terms of the Shipping Contract prior to entering into the contract. (Ashby Decl. ¶ 13.) The copy of the Shipping Contract expressly indicates that an insurance policy would be separately obtained. (Compl. Ex. B; ECF No. 19-1 Ex. 1).) It is undisputed that Ashby knew that this policy would be obtained from Lloyds—an entity whose full name expressly refers to London—and that the policy was itself a part of the overall Shipping Contract.

Second, Ashby does not contend that he lacked the ability to obtain a copy of the Cargo Policy or that he never received a copy before paying for the Shipping Contract. Ashby authorized the wire transfer for the cost of the Shipping Contract, inclusive of the Cargo Policy's cost, only after the Cargo Policy had issued. (*Compare* Compl. Ex. C, *with* ECF No. 19-2 Ex. 2.) The fact that Plaintiff included a copy of the Cargo Policy with the Complaint—and expressly sought coverage

under the Cargo Policy months before initiating this suit—suggests to the Court that Plaintiff either had a copy of the Cargo Policy at the time Ashby sent Plaintiff's payment for the Shipping Contract or, at a minimum, had the ability to obtain one. Under these circumstances, the Court concludes that Plaintiff had the ability to learn of the forum selection clause. *See Deiro*, 816 F.2d at 1365; *see also Luedde v. Devon Robotics, LLC*, No. 10-cv-400W, 2010 WL 2712293, at *7 (S.D. Cal. July 2, 2010) (rejecting as "unavailing" the plaintiff's attempt "to paint herself as naïve" to find that plaintiff had adequate notice of the forum selection clause).

### ii. The Clause Can Bind Plaintiff

Plaintiff's principal argument that the Cargo Policy's forum selection clause cannot be enforced is that Plaintiff is not a party to the Cargo Policy. (ECF No. 19 at 19–20.) Plaintiff argues that only parties to a contract are bound by its terms. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Plaintiff argues that it is not a party to the Cargo Policy and thus the Cargo Policy's terms do not bind Plaintiff. (ECF No. 19 at 19–20.) The Court rejects Plaintiff's argument.

As an initial matter, Plaintiff's opposition contradicts Plaintiff's multiple allegations in the Complaint that Plaintiff and Lloyds "entered into a valid insurance agreement" to which Plaintiff was a party. (Compl. ¶¶ 38, 47, 54.) Plaintiff's own pleadings therefore make Plaintiff's newfound argument suspect.

However, even if the Court accepts Plaintiff's newfound contention that it is not a party to the Cargo Policy, the fact the Plaintiff is not a party to the policy does not preclude the enforcement of the clause against Plaintiff. A forum selection clause may be enforced against a non-party in at least two circumstances: (1) when the non-party is a third-party beneficiary of the contract with the clause, *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1180 (9th Cir. 2014), and (2) when the non-

party and the conduct at issue are "closely related" to the parties to the contract with the forum selection clause, *Manetti-Farrow, Inc.*, 858 F.2d at 514 n.5. The Cargo Policy's forum selection clause is enforceable against Plaintiff for both reasons.

First, under the third-party beneficiary test, a non-signatory plaintiff who "knowingly exploits the benefits of [an] agreement and receives benefits flowing directly from the agreement" may be required to abide by the forum selection clause. *Nguyen*, 763 F.3d at 1880. Even if Plaintiff is not a party to the Cargo Policy, Plaintiff is undoubtedly a third-party beneficiary of the Cargo Policy. The Yacht is the Cargo Policy's "interest" and provides that any claim amount shall be made payable to Plaintiff. (Compl. Ex. C. at 1.) Plaintiff has knowingly sought to exploit the Cargo Policy's benefits, as evidenced by Plaintiff's repeated attempts to tender a claim under the Policy before commencing this suit. (Compl. ¶¶ 16–35.) Indeed, in undertaking these attempts, Plaintiff's counsel expressly observed that "the beneficiary [under the Cargo Policy] is White Knight Yacht, LLC." (ECF No. 19-1 Ex. 22 at ECF page 107 (May 10, 2018 letter from Douglas M. Field to Sarah Martin).)

Second, under the close-relationship test, a non-party may be bound by the forum selection clause if the non-party is "closely related to the contractual relationship." *Manetti-Farrow, Inc.*, 858 F.2d at 514 n.5. A non-party is closely related when it is "part of the larger contractual relationship" between the parties to the agreement with the forum selection clause. *See Holland Am. Line, Inc. v. N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007). Plaintiff is undoubtedly closely related to the contractual relationships to which the forum selection clause applies. Lloyds is the insurer of the Cargo Policy under which Lloyds "agree[s] losses, if any, shall be payable to the order of [Plaintiff]." (Compl. Ex. C. at 1.) The Cargo Policy was also effected by H.W. Wood "acting on behalf of [UYT]." (*Id.*) UYT's vice president

signed the Cargo Policy.  Critically, Plaintiff seeks to recover from all Defendants for Plaintiff's failure's obtain coverage under the Cargo Policy.  Accordingly, Plaintiff can be bound by the forum selection clause on this basis as well even if Plaintiff is not a party to the Cargo Policy.

### b. Plaintiff Has Not Shown That It Will Be Deprived of Its Day in Court

The second basis for which a court may refuse to enforce a forum selection clause is that the plaintiff "would effectively be deprived of his day in court were the clause enforced." *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1203 (C.D. Cal. 2015).  "[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 18.  A party may show that a forum selection clause should not be enforced if all the relevant witnesses are not located in that forum, the party is physically unable to go to the chosen forum, or the party lacks the financial ability to bear the costs of proceeding in the chosen forum.  *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 869 (9th Cir. 1991); *Goldman v. U.S. Transp. & Logistics, LLC*, No. 17-cv-00691-BAS-NLS, 2017 WL 6541250, at *5 (S.D. Cal. Dec. 20, 2017).

Plaintiff does not provide sufficient allegations to prove that enforcement of the Cargo Policy's forum selection clause would deprive it of its day in court.  Ashby contends that it "would be a huge financial burden on White Knight and myself" to pursue this lawsuit in Great Britain.  (Ashby Decl. ¶ 36.)  This contention, however, is made in a boilerplate fashion without any specific and concrete evidence that pursuing Plaintiff's claims in the Courts of England and Wales would be gravely difficult or inconvenient.

In the absence of countervailing evidence from Plaintiff, the Court has no reason to stray from the conclusions of other courts regarding the adequacy of England and Wales. *See Bremen*, 470 U.S. at 1914 ("[T]he courts of England meet the standards of neutrality and long experience in admiralty litigation."); *see also Comm Network Servs. Corp. v. Colt Telecomm.*, No. C 04–1283 MEJ, 2004 WL 1960174, at *9 (N.D. Cal. Sept. 3, 2004) ("[T]he Court finds that Plaintiff was not denied a meaningful day in court in England . . . ."). Accordingly, the Court concludes that Plaintiff has not shown that this consideration weighs against enforcement of the clause.

### 3. Plaintiff Has Not Shown that the Public Interest Factors Strongly Disfavor Enforcement of the Clause

Having found that the Cargo Policy's forum selection clause is valid and enforceable, the Court now considers whether Plaintiff has shown that the public interest factors overwhelmingly disfavor enforcement of the clause. As the Court has recognized, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 60. The relevant public interest factors are:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (citations and internal quotations omitted).

1    Here, although it is Plaintiff's burden to show that the public interest factors

2    strongly disfavor dismissal of this action from the present forum, Plaintiff fails to

3    make any showing on the public interest factors. Plaintiff's failure to do so is a

4    sufficient basis for the Court to grant Lloyds' and H.W. Wood's motions to dismiss

5    at this juncture.

6

7        Nevertheless, Lloyds provides a thorough analysis regarding the public

8    interest factors, which confirms for the Court that the public interest factors favor

9    dismissal. The Court highlights here only some of the reasons Lloyds identifies.

10   First, with respect to the factors concerning the applicable law, the clause points to

11   a forum that is more familiar with the law that will govern the insurance. In the same

12   stroke, the forum selection clause includes a choice-of-law provision, which

13   provides that the law of England and Wales governs the Cargo Policy. The English

14   courts are more adept at interpreting and applying English law. Therefore, the need

15   to apply English law favors dismissal.

16

17       Second, the allegations do not show a strong local interest in the insurance

18   dispute and, instead, show that a trial in this Court would burden a jury and the

19   California taxpayers. Although Plaintiff's principal resides in California, none of

20   the Defendants resides in California and Plaintiff itself is a Delaware limited liability

21   company. Accordingly, in the absence of any showing by Plaintiff, the Court

22   concludes that the controlling weight should be given to the Cargo Policy's forum

23   selection clause.

24

25                        *        *        *

26       Having considered the Cargo Policy's forum selection clause, the Court

27   concludes that: (1) the clause encompasses Plaintiff's claims against Lloyds and

28   H.W. Wood, (2) the clause is valid and enforceable, and (3) Plaintiff has not shown

that the public interest factors strongly disfavor enforcement of the clause for Plaintiff's claims against Lloyds and H.W. Woods.  Accordingly, the Court grants Lloyds' and H.W. Wood's motions to dismiss on the basis of the Cargo Policy's forum selection clause.  Dismissal for forum *non conveniens* based on a forum selection clause should be without prejudice.  *Goldman*, 2017 WL 6541250, at *9–10.  As such, the Court dismisses Plaintiff's claims against Lloyds and H.W. Wood without prejudice.

## PERSONAL JURISDICTION

UYT moves to dismiss Plaintiff's claims for lack of personal jurisdiction and improper venue.  (ECF No. 33.)  The Court finds dispositive UYT's lack of personal jurisdiction argument and limits its analysis to this issue.

### A.    Legal Standard

As a procedural matter, a party may generally move to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  *See* Fed. R. Civ. P. 12(b)(2).  Here, because UYT moves to dismiss after filing an answer to the Complaint in which it asserts lack of personal jurisdiction as a defense, the Court construes UYT's motion as a Rule 12(c) motion for judgment on the pleadings.  Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is proper only when there is no unresolved issue of fact and no question remains that the moving party is entitled to a judgment as a matter of law.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *Honey v. Distelrath*, 195 F.3d 531, 532–33 (9th Cir. 1999).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the

defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). If the motion is based on written materials rather than an evidentiary hearing, the plaintiff must only make a "prima facie showing of jurisdictional facts." *Bauman v. DaimlerChrysler*, 579 F.3d 1088, 1094 (9th Cir. 2009), *vacated on other grounds*, 603 F.3d 1141 (9th Cir. 2010) (quotations and citations omitted). A *prima facie* showing "must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts." *Excel Plas, Inc. v. Sigmax Co., Ltd.*, No. 07-CV-578-IEG, 2007 WL 2853932, at *2 (S.D. Cal. Sept. 27, 2007) (citation omitted). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotations and citations omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

To substantively resolve a personal jurisdictional challenge, a federal district court applies the law of the state where the court sits when no applicable federal statute authorizes personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Neither side contends that a federal statue authorizes personal jurisdiction here. California's long-arm statute, however, extends jurisdiction to the limits of federal due process and thus federal due process inevitably governs the parties' jurisdictional dispute. *See Pebble Beach*, 453 F.3d at 1155. Federal due process requires that a nonresident defendant have sufficient "'minimum contacts' with the forum such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)). The nature of the contacts required for the constitutional exercise of personal jurisdiction turns on whether the claimed basis for jurisdiction is general or specific. *Ranza v. Nike, Inc.*, 793 F.3d

1059, 1068 (9th Cir. 2015).  UYT contends that neither basis for jurisdiction exists in this case.  The Court agrees.

## B.  Plaintiff Concedes the Absence of General Jurisdiction Over UYT

UYT contends that this Court lacks general jurisdiction.  (ECF No. 33 at 4-7.) General jurisdiction allows a court to hear any and all claims against a defendant regardless of whether the claims relate to the defendant's contacts with the forum state.  *Schwarzenegger*, 374 F.3d at 802.  The "paradigm forum for the exercise of general jurisdiction" is "one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, (2011). These "are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).  Plaintiff alleges that UYT is not incorporated in, nor does it maintain a principal place of business in California. (Compl. ¶ 4.)  Plaintiff does not oppose UYT's motion to dismiss on this ground. (ECF No. 34.)  Accordingly, the Court concludes that it lacks general jurisdiction over UYT.

## C.  Plaintiff Fails to Make a *Prima Facie* Showing of Specific Jurisdiction

Both parties dispute whether this Court may exercise specific jurisdiction over UYT.  (ECF No. 33 at 5; ECF No. 34 at 6.)  A court may exercise specific jurisdiction when the following requirements are met: (1) "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws," (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities," and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.  "The plaintiff bears the burden of satisfying the

first two prongs of the test." *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable.'" *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co.*, 453 F.3d at 1155.

### 1. Plaintiff Has Not Shown that UYT Purposefully Directed Its Conduct at California

UYT contends that it neither purposefully availed itself nor purposefully directed any tortious conduct at California. (ECF No. 33 at 5–7.) Plaintiff objects, but points to its own conduct and the conduct of third parties to argue that UYT purposefully availed and directed its conduct at California. (ECF No. 34 at 6–8.)

"A purposeful availment analysis is most often used in suits sounding in contracts." *Schwarzenegger*, 374 F.3d at 802. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* at 802. The latter test applies here given the nature of Plaintiff's claims against UYT. "Purposeful direction" requires a defendant to have "(1) committed an intentional act," (2) "expressly aimed at the forum state," (3) "causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* The requirement "assures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted).

Although Plaintiff is a California-based entity that owns the Yacht, this is insufficient to show that UYT purposefully directed its conduct at California. The Court comes to this conclusion for two reasons. First, the nature of the underlying contractual relationships amongst the parties does not show that UYT purposefully directed its conduct at California. The underlying Shipping Contract was between Plaintiff and Raven, a Seattle-based entity, for shipment of the Yacht from Canada to Mexico. (Compl. Ex. B.) Raven separately contracted with UYT to perform the actual transport of the Yacht from Canada to Mexico. (Compl. ¶ 14.) These allegations simply do not show that UYT purposefully directed its conduct at California.

Second, Plaintiffs' allegations regarding its attempts to seek coverage under the Cargo Policy similarly do not show that UYT purposefully directed its conduct at California. At most, Plaintiff points to its own conduct or the alleged conduct of third parties—not based in California—that allegedly attempted to contact UYT—at UYT's place of business outside California—regarding Plaintiff's assertion of a claim under the Cargo Policy administered by a London-based insurer. The unilateral conduct of Plaintiff and the third parties, however, cannot show that UYT purposefully directed any conduct at California. *See Burger King Corp.*, 471 U.S. at 475. Accordingly, the Court concludes that Plaintiff has not sufficiently alleged that UYT purposefully directed its conduct to California such that this Court may exercise specific jurisdiction over it. Because Plaintiff fails to identify any conduct by UYT purposefully directed at California, there are no relevant contacts with California for the Court to assess whether Plaintiff's claims arise from those contacts.

//

//

//

### 2. The Exercise of Jurisdiction Would Not Comport with Due Process

Even if the Court assumes that Plaintiff has satisfied the first two prongs of the specific jurisdiction test, UYT has shown that the exercise of jurisdiction would not comport with due process. (ECF No. 35 at 6–7.)

Several non-dispositive factors guide a court's analysis of this issue: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Burger King Corp.*, 471 U.S. at 476–77. The existence of an alternative forum becomes an issue "only when the forum state is shown to be unreasonable." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988). Application of these factors shows that the exercise of specific jurisdiction over UYT would not comport with due process, particularly given the Cargo Policy's forum selection clause.

First, UYT's lack of purposeful interjection into California renders the exercise of specific jurisdiction unreasonable. The defendant's purposeful interjection factor parallels the minimum contacts question. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002). "Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011). "Even if there is sufficient interjection into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (internal quotations omitted). Plaintiff has pointed

only to its unilateral conduct from California and the conduct of third parties that do not reside in California. UYT's alleged failures to respond to these requests do not constitute a degree of purposeful interjection that would render the exercise of jurisdiction over UYT reasonable. This factor weighs most heavily in the Court's conclusion that the exercise of specific jurisdiction over UYT by a California forum would not comport with due process.

Finally, the fifth through seventh factors weigh against the exercise of specific jurisdiction because of the Cargo Policy's forum selection clause. The Court has already dismissed Plaintiff's claims against Lloyds and H.W. Wood based on the forum selection clause. Given that Plaintiff's claims against UYT concern the same insurance policy, it would be inefficient to provide a resolution to Plaintiff's claims against UYT in this Court. Moreover, this Court is not the only jurisdiction where Plaintiff can receive convenient and effective relief. As the Court has already recognized, the Courts of England and Wales have a reputation for justice in admiralty cases. Accordingly, the Court grants UYT's motion to dismiss for lack of personal jurisdiction over UYT.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **GRANTS** Lloyds' and H.W. Wood's motions to dismiss Plaintiff's claims based on the Cargo Policy's forum selection clause. (ECF Nos. 11, 13.) The Court **DISMISSES** Plaintiff's claims against Lloyds and H.W. Woods **WITHOUT PREJUDICE** to Plaintiff refiling the claims in the proper jurisdiction.

2. The Court **TERMINATES** as moot H.W. Wood's motion to strike. (ECF No. 12.)

3. The Court **GRANTS** UYT's motion to dismiss Plaintiff's claims against UYT for lack of personal jurisdiction. (ECF No. 33.) The Court

**DISMISSES** Plaintiff's claims against UYT **WITHOUT PREJUDICE**.

      4.      Because the Court has dismissed all of Plaintiff's claims, the Court **DISMISSES WITHOUT PREJUDICE** this action.

      **IT IS SO ORDERED.**

**DATED:  September 10, 2019**

Hon. Cynthia Bashant
United States District Judge

18cv2616